# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

         **v.**               :        **Cr. No. 09-155-01**

LUIS COLON             :

## GOVERNMENT'S MEMORANDUM REGARDING RESENTENCING

On March 17, 2004, defendant Luis Colon set out on a mission to murder rival gang members. Colon was a leader, the so-called "First Crown," of the Bethlehem Sun Tribe, a chapter of the national criminal organization, the Almighty Latin Kings and Queens Nation (ALKQN). ALKQN was essentially a drug trafficking gang that dispensed vainglorious titles to its chapters and members and maintained discipline through a regimen of violent punishment that ranged from beatings to homicide.

On this occasion, Colon had received a call from the Philadelphia Lion Tribe of the Latin Kings asking that Bethlehem and Allentown Sun Tribe members assist in a mission to kill other gang members in Vineland, New Jersey who were considered to be enemies of the ALKQN. Colon obliged, organizing a group of ALKQN members in Bethlehem and Allentown, gathering numerous weapons, and departing for Vineland. The attack did not occur. Fortunately, law enforcement officers were tipped off and intercepted the small army – approximately two dozen members of the ALKQN,

including Luis Colon – when the group arrived in Vineland. Officers recovered numerous operable and loaded firearms along with other weapons.

Colon participated in the Latin Kings for almost a decade, and ultimately was charged and convicted in this case. One of those charges – using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) – related to the mission to Vineland, in which the gang members possessed guns in furtherance of their conspiracy to commit murder. Ultimately, Colon entered a cooperation guilty plea; the parties agreed that a sentence in the range of 322 to 360 months was appropriate (below the advisory guideline range); and the Court imposed a sentence of 336 months' imprisonment. As required by law, the Court imposed five years of that 28-year term as a consecutive penalty under Section 924(c).

Now, Colon is entitled to resentencing, based on a change in law completely unrelated to his actual history and conduct. With respect to the 924(c) charge, no one can dispute that Colon's crime – agreeing with others to commit murder and arming themselves to complete the mission – is exactly the type of conduct that Congress aimed to sanction through the mandatory penalty in Section 924(c), which addresses the greatly magnified risk of danger and tragedy when a criminal brings a gun. But Section 924(c) now does not apply to this incident, for the sole reason that the Supreme Court determined that the statute is unduly vague in the extent of its application to others whose intent to engage in violence is not as manifest as that of Colon and his cohorts.

In sum, while the 924(c) charge now must be dismissed, there is every good reason at this time not to change the sentence imposed on Colon. The sentence was not

driven by the fact of a 924(c) charge. Rather, it was a below-guideline sentence that was determined based on this Court's assessment of all pertinent facts. And none of those facts have changed.

The government recognizes that Colon has behaved well in prison, and commends him for his achievements. As a result, in this particular case, the government does not object to a modest reduction in the total term of imprisonment, which may be accomplished simply by eliminating the five-year consecutive sentence imposed for the 924(c) charge. The remainder of the sentence should be left intact, reflecting the egregious criminal conduct in which Colon engaged for so many years.[1]

---

[1]  There were four other defendants affected by the invalidity of the 924(c) charge at issue (Count Five of the Superseding Indictment).

Pedro Velasquez had been sentenced to 150 months, and his sentence was scheduled to end on March 11, 2021. On June 3, 2020, the Court reduced the sentence to time served, effectively reducing the sentence by nine months.

Carlos Martinez was sentenced to 180 months. He was only convicted of the conspiracy to commit murder (Count Four) and the related 924(c) charge (Count Five). In his case, Count Five should be vacated, and the total sentence must be reduced to no more than 120 months, which is the statutory maximum term for Count Four.

Neftali Colon was sentenced to 279 months. He participated in the Latin Kings organization, and also committed a murder in 2004 as part of that participation. In his case, Count Five should be vacated, but given the full circumstances the government will recommend that the same total sentence be reimposed by adjusting the sentence on the remaining counts.

Oscar Hernandez was sentenced to 240 months. He aided Neftali Colon in the 2004 murder, and the government will argue that even with Count Five vacated, the Court should reimpose the same total sentence by adjusting the sentences on the remaining counts.

## I.     Background.

By 2001, Colon was participating in the criminal activities of the Bethlehem Sun Tribe, ultimately becoming the "First Crown" and acting as a leader of dozens of members. Colon, along with other defendants, jointly engaged in numerous crimes to help finance the enterprise and to maintain and increase the stature of the enterprise and the defendants' respective positions in the enterprise.

On numerous occasions, members participated in Tribe meetings in which participants discussed and implemented punishments in accordance with national ALKQN and local Sun Tribe rules. In these meetings, dues were collected, "trials" were held on alleged violation of Tribe rules, and punishments were issued, including orders that violators and others be beaten or killed.

In addition to the 2004 Vineland incident described above, Colon and his confederates engaged in many other acts of violence and drug trafficking in crack and methamphetamine that are specified in the indictment. Another murder plot took place from late November 2007 through January 2008, when Colon and other members determined to kill a Tribe associate known as "Big Head Izzy." The conspirators believed that "Big Head Izzy" had "snitched" to law enforcement officers who were investigating a murder committed by Neftali Colon, a fellow Tribe member and the younger brother of Luis Colon. The murder of "Big Head Izzy" was prevented when law enforcement officers were tipped off to the plans and arrested the intended victim on an unrelated warrant.

Colon regularly participated in drug transactions. The largest charged in the indictment involved an effort in May 2008 to acquire a large quantity of methamphetamine. On May 8, 2008, co-defendant Samuel Colon received $6,000 in cash from Luis Colon in exchange for Samuel Colon agreeing to travel to Las Vegas to pick up approximately four pounds of methamphetamine from Jose Colon, the uncle of Luis Colon, and return it to Bethlehem. Samuel Colon was given $40,000 in cash by Luis Colon to pay for the methamphetamine. Samuel Colon then traveled to Las Vegas, where he provided the payment for the methamphetamine to Jose Colon. On May 12, 2008, Samuel Colon received approximately 1,793 grams of methamphetamine which Jose Colon secreted in Samuel Colon's luggage for the return trip to Philadelphia. However, law enforcement officers intercepted the luggage on a flight from Las Vegas to Philadelphia and seized the methamphetamine before Luis Colon and his fellow Sun Tribe members could take possession of it. Law enforcement officers observed Luis Colon at the Philadelphia airport when Samuel Colon arrived.

On June 9, 2011, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) ("C plea"), Colon pled guilty to these charges:

conspiracy to participate in a racketeering (RICO) enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1)

conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 4 – related to the Vineland conspiracy)

using and carrying a firearm during a violent crime, in violation of 18 U.S.C. § 924(c) (Count 5 – related to Count 4)

conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 6 – related to "Big Head Izzy")

two counts of distribution of more than 50 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Counts 13 and 17)

distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 15)

two counts of distribution of more than 5 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Counts 26 and 29)

four counts of distribution of controlled substances within 1,000 feet of a public housing authority property, in violation of 21 U.S.C. § 860(a) (Counts 14, 18, 27, and 30)

one count of possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count 35 – related to the Las Vegas expedition)

Pursuant to the guilty plea agreement, the parties jointly recommended "a term of imprisonment within the range of 322 months to 360 months." Guilty Plea Agreement ¶ 3.

The Probation Office correctly calculated the defendant's advisory sentencing guidelines range at 360 months to life imprisonment plus a mandatory consecutive minimum of 60 months' imprisonment. PSR ¶ 179. This calculation was not challenged by the defendant.

On March 14, 2012, this Court imposed a total term of imprisonment of 336 months, imposing, as required by law, 60 months of that term as a consecutive sentence on the 924(c) count (Count 5). The concurrent terms imposed on all other counts of conviction were:

Count 1 – 276 months

Counts 4, 6, 14, 15, 18, 27, and 30 – 120 months

Count 35 – 240 months

The Court also imposed a period of ten years' supervised release.

Velasquez has served about half of the 28-year sentence. At present, his minimum release date, if he earns remaining available good time credit, is March 17, 2035.

## II.     The 924(c) Count Has Been Vacated.

On January 27, 2020 (ECF 608), pursuant to the agreement of the parties, the Court granted the 2255 motion of the defendant and dismissed the 924(c) charge in Count Five.

This action was necessitated by *United States v. Davis*, 139 S. Ct. 2319 (2019), that invalidated part of the definition of "crime of violence" in Section 924(c).

Section 924(c), as applied in this case, requires a consecutive mandatory sentence of five years for using or carrying a firearm during and in relation to a crime of violence. The statute defines a "crime of violence" as "an offense that is a felony" and –

(A)     has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)     that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). In *Davis*, the Court invalidated subsection (B), the so-called "residual clause," as unconstitutionally vague, meaning that a predicate crime of violence may now qualify only under subsection (A), the "elements clause."

The application of the "elements clause" is determined by a "categorical approach," in which the Court must determine whether the offense at issue categorically

requires, in every instance, proof of the use, attempted use, or threatened use of physical force. Under the categorical approach, if the statute of conviction at issue is overbroad, that is, it applies to conduct that both falls within and outside the pertinent definition, then a conviction under the statute will not qualify. *See, e.g., United States v. Johnson*, 899 F.3d 191, 203 (3d Cir. 2018); *United States v. Dahl,* 833 F.3d 345, 350 (3d Cir. 2016). In this approach, the actual facts of the predicate crime are irrelevant. *Id.*

Here, the 924(c) charge in Count Five was predicated on Count Four, charging conspiracy to commit murder in aid of racketeering. Following *Davis*, a conspiracy, which may rest on an agreement alone without the commission of actual force, does not categorically qualify as a 924(c) predicate crime of violence. *See, e.g.*, *United States v. Barrett*, 937 F.3d 126, 129 (2d Cir. 2019); *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019) (en banc) (the government concedes the point and the court agrees); *United States v. Lewis*, 907 F.3d 891, 894-95 (5th Cir. 2018); *Brown v. United States*, 942 F.3d 1069 (11th Cir. 2019) (per curiam). The 924(c) conviction is therefore invalidated in this case.

## III.   The Sentence Should Be Reduced by Five Years.

In this case, a powerful argument may be made that the Court should simply reimpose the original 28-year term, by increasing the sentence on Count One (the RICO conspiracy, on which the maximum term of imprisonment is life, 18 U.S.C. § 1962(d)).

This sentence was the product of an agreement by the parties, who stipulated that the appropriate term was between 322 and 360 months. Further, the total 336-month term

- 8 -

was the result of this Court's careful consideration of all pertinent circumstances; it was not driven at all by the fact that one of the convictions involved Section 924(c).

Most significantly, there has been no change in the relevant facts in this case. The only reason Colon even has the possibility of resentencing is because of the Supreme Court's interpretation of the application of the statute to circumstances that do not resemble his.

The current proceeding is the product of the legal developments that began in *Johnson v. United States*, 576 U.S. 591 (2015), when the Court invalidated as unconstitutionally vague the "residual clause" in the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e). The Court had struggled for years to interpret the application of this clause ("or otherwise involves conduct that presents a serious potential risk of physical injury to another"), in matters involving such offenses as attempted burglary, *James v. United States*, 550 U.S. 192 (2007); driving under the influence, *Begay v. United States*, 553 U.S. 137 (2008); failure to report to a penal institution, *Chambers v. United States*, 555 U.S. 122 (2009); and vehicular flight from a law enforcement officer, *Sykes v. United States*, 564 U.S. 1 (2011). In *Johnson*, the Court concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges," *id.* at 597, and therefore no prior conviction may qualify as a predicate conviction under this provision. In *Davis*, the Court extended this ruling to the identical "residual clause" appearing in the definition of "crime of violence" in Section 924(c).

As a result, a predicate crime may now qualify under Section 924(c) as a "crime of violence" only under the surviving "elements clause," and the attendant "categorical approach." Under that strange approach to criminal sentencing, the actual facts of the defendant's personal conduct do not matter; all that matters is whether anyone can commit the crime of conviction and do so without engaging in the use, attempted use, or threatened use of physical force, whether the defendant himself did so or not.

And so we arrive at the bizarre place where an armed conspiracy to commit murder is not a "crime of violence" under Section 924(c). In *United States v. McCollum*, 885 F.3d 300 (4th Cir. 2018), Judge William B. Traxler, Jr. put it well: "And this, finally, is what we have come to: plotting to murder one's fellow human beings is not a crime of violence. Heaven help us." *Id.* at 314 (Traxler, J., dissenting).

There is, however, a ready solution to the problem in many cases, including this one: Where the defendant's conduct was actually violent, the Court should exercise its discretion to reimpose the total sentence accordingly.

Judicial recognition of the absurd results often produced by the categorical approach is nearly universal. *See, e.g., United States v. Williams*, 898 F.3d 323, 337 (3d Cir. 2018) (Roth, J., concurring, expressing the "concern that the categorical approach, along with its offspring, the modified categorical approach, is pushing us into a catechism of inquiry that renders these approaches ludicrous."); *United States v. Chapman*, 866 F.3d 129, 136-37 (3d Cir. 2017) (Jordan, J., concurring). In a recent immigration matter, the Third Circuit began its opinion:

We deal today with another appearance of what is known as the "categorical approach" to determining whether and how a conviction under state law will have consequences for the convicted criminal under federal law. We must apply it now in an immigration case, but, in whatever context it surfaces, it's a fair bet that this formalistic framework may result in some counterintuitive and hard-to-justify outcome. And so it does here. . . .

The categorical approach mandates our accedence to Cabeda's demand that we ignore what she actually did and focus instead on what someone else, in a hypothetical world, could have done. That's the analytical box the categorical approach puts us in. Thus, even though it is indisputable on this record – and, in fact, no one does dispute – that Cabeda repeatedly had sex with a minor, when we assess her conviction alongside the pertinent federal statutes, the categorical approach blinds us to the facts and compels us to hold that the crime of which she was convicted does not amount to the aggravated felony of "sexual abuse of a minor." It is a surpassingly strange result but required by controlling law.

*Cabeda v. Attorney Gen. of United States*, 971 F.3d 165, 167 (3d Cir. 2020).[2]

---

[2]  Other judicial criticism of this situation is legion. *See also, e.g.*, *United States v. Reyes-Contreras*, 910 F.3d 169, 186 (5th Cir. 2018) (en banc) ("The well-intentioned experiment that launched fifteen years ago has crashed and burned."); *United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019) ("In the nearly three decades since its inception, the categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad."); *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc) (Thapar, J., joined by four judges) ("The time has come to dispose of the long-baffling categorical approach."); *United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (en banc) (Park, J., concurring on behalf of five judges, quoting numerous other judges, and stating: "As a growing number of judges across the country have explained, the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice."); *United States v. Doctor*, 842 F.3d 306, 313-15 (4th Cir. 2016) (Wilkinson, J., concurring) (it "can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," that, "too aggressively applied, eviscerates Congress's attempt to enhance penalties for violent recidivist behavior," creating "a criminal sentencing regime so frankly and explicitly at odds with reality."); *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Graber, J., concurring) ("I write separately to add my voice to the substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach. . . . The categorical approach requires us to perform absurd legal gymnastics, and it produces absurd results. . . . It is past time for someone with the power to fix this mess to do so."); *Williams v. Barr*, 960 F.3d 68, 80

The courts have recognized the plain solution. In *United States v. Carter*, 961 F.3d 953 (7th Cir. 2020), while finding that a particular offense qualified as a crime of violence under the categorical approach, the court explained at length that courts should consider variances based on a defendant's actual conduct in those cases where application of the categorical approach, which focuses on hypothetical conduct of other people, would produce an odd result. Judge Hamilton wrote in part: "we also remind district courts that the classification of prior convictions under the Sentencing Guidelines can produce abstract disputes that bear little connection to the purposes of sentencing. As the Sentencing Commission itself has recognized since the Sentencing Guidelines were first adopted, district judges may and should use their sound discretion to sentence under 18 U.S.C. § 3553(a) on the basis of reliable information about the defendant's criminal history even where strict categorical classification of a prior conviction might produce a different guideline sentencing range." *Id.* at 954. In a dissenting opinion in an immigration case, Justice Breyer, while explaining the categorical approach at length, made the same point: "in the ACCA context, a sentencing judge, even where ACCA is inapplicable, has some discretion in determining the length of a sentence. If he finds that the present defendant in fact burgled, say, a dwelling and not a boat, he can take that into

---

(2d Cir. 2020) (concurring in a ruling that a Connecticut firearms statute was categorically overbroad in relation to an immigration provision, despite the fact that the defendant possessed an ordinary firearm, Judge Jacobs stated: "The result in the Court's opinion is compelled, not endorsed. I would not try to justify it to any sensible person."); *United States v. Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (Judge N.R. Smith, dissenting from a ruling that second-degree murder in violation of 18 U.S.C. § 1111 is not a 924(c) crime of violence, quotes the film *Zoolander*: "I feel like I am taking crazy pills.").

account even if the sentencing enhancement does not apply." *Pereida v. Wilkinson*, 141 S. Ct. 754, 771 (2021).

Thus, in *United States v. Fuentes-Canales*, 902 F.3d 468 (5th Cir. 2018), the court held that Texas burglary of a habitation, in violation of Tex. Penal Code § 30.02(a) and (d), is broader than and does not qualify as burglary of a dwelling under the former § 2L1.2. But the court affirmed the sentence on the basis of the fourth prong of plain error review, given that the jury in the previous case actually found generic burglary or aggravated assault, and the undisputed facts in the PSR also demonstrated that the crime was violent. The court added: "While courts cannot consider the factual means by which a defendant committed a prior offense for purposes of arriving upon the correct Guidelines sentencing range, the defendant's actual commission of a 'crime of violence' or other evidence regarding the defendant—if sufficiently supported by the record—may be considered in imposing a sentence well outside the advisory Guidelines range." *Id.* at 477. *See also United States v. Gardner,* 939 F.3d 887, 891 (7th Cir. 2019) (the district court did not err, after accurately calculating the guideline range, in varying upward to the range that would have applied when burglary was deemed a crime of violence under the Guidelines, given the violent nature of the defendant's prior burglary). *See also United States v. Mills*, 917 F.3d 324 (4th Cir. 2019) (the court need not resolve whether a particular offense qualified as a crime of violence where the sentencing court stated that it would impose the same sentence regardless of the guideline range, and that was reasonable); *United States v. Door*, 996 F.3d 606, 622-23 (9th Cir. 2021) (after sentences were vacated based on application of the categorical approach to prior convictions, the

district court reimposed the same 276-month sentence, as a variance from the current range of 140-175 months; the sentence is affirmed as substantively reasonable).

This approach has been applied in other cases in this Circuit. For instance, in *United States v. Wiltshire*, 736 F. App'x 322 (3d Cir. 2018) (not precedential), Wiltshire was initially sentenced under the Armed Career Criminal Act, on the basis of three predicate convictions: two New York convictions for attempted robbery, and a Pennsylvania conviction for selling heroin. The guideline range was 262-327 months, and the court imposed a sentence (later affirmed by the Third Circuit) of 276 months. More recently, the defendant filed a 2255 motion, and the parties agreed that ACCA status no longer applied, based on application of the categorical approach and the drafting of the New York robbery statute. Without ACCA status, the sentencing range was now 110-137 months. Judge Pratter varied upward and imposed a term of 180 months.

On appeal, Wiltshire asserted that the sentence was substantively unreasonable. The Third Circuit disagreed, stating, "But as the Government points out, the District Court was under no obligation to mechanistically vary its sentence along with the Guidelines range, and the 'disparity [between the two sentencing ranges] result[ed] from' a change in the law 'entirely divorced from Wiltshire's actual conduct and background.' Government Br. 30-31. Nor was it unreasonable for the District Court to conclude that without the ACCA enhancement, the Guidelines range no longer adequately reflected the seriousness of Wiltshire's prior participation in two violent robberies, including one where he hit the victim in the head with a bat. For those reasons, the Court did not abuse its discretion when it varied upward." *Id.* at 325.

- 14 -

Similarly, in *United States v. Moon*, 757 F. App'x 134 (3d Cir. 2018) (not

precedential), the Court approved a similar variance. There, career offender status, which

had produced a range of 210-240 months at the original sentencing, was voided due to

application of the categorical approach to state robbery offenses, producing a new range

of 77-96 months. Judge Baylson then imposed a sentence of 216 months, based on an

upward variance in light of the defendant's actual violent record, and the Third Circuit

affirmed.

In *United States v. Davis*, 112 F.3d 118 (3d Cir. 1997), the Third Circuit addressed

a situation similar to that presented here, and specifically authorized what we describe.

There, the defendant, in a 2255 motion, successfully challenged his conviction for a

924(c) offense, following the Supreme Court's decision in *Bailey v. United States*, 516

U.S. 137 (1995), that narrowed the definition of "use" of a firearm in violation of the

statute. The Third Circuit held that the district court could then restructure the sentence

on other unchallenged counts of conviction to produce the total sentence the court

deemed appropriate. It explained:

> [R]esentencing on the entire aggregate sentence is supported by the policy
> argument which gave rise to the sentencing package doctrine, a doctrine usually
> applied on direct appeal that allows resentencing on all counts when a multicount
> conviction produces an aggregate sentence or "sentencing package." *Merritt v.
> United States*, 930 F.Supp. 1109, 1113-14 (E.D.N.C.1996). The sentencing
> package doctrine suggests that
>
> > when a defendant is found guilty on a multicount indictment, there is a
> > strong likelihood that the district court will craft a disposition in which the
> > sentences on the various counts form part of an overall plan. When a
> > conviction on one or more of the component counts is vacated, common
> > sense dictates that the judge should be free to review the efficacy of what
> > remains in light of the original plan, and to reconstruct the sentencing

- 15 -

> architecture upon remand, within the applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.
>
> *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir.1989). . . . Thus, resentencing on direct appeal or on collateral attack, allows the sentence to "accurately reflect the judge's original intent regarding the appropriate punishment for a defendant convicted of multiple offenses" and to reflect the gravity of the crime. [*Gordils v. United States,* 1996 WL 614139, at *7 (S.D.N.Y. 1997).] The end result of this policy must be that "where a sentencing judge imposed a multicount sentence aware that a mandatory consecutive sentence is to be tacked on to it and the mandatory sentence is later stricken, the judge is entitled to reconsider the sentence imposed on the remaining counts." *Id.*

*Davis,* 112 F.3d at 122-23.

Accordingly, in this case, where Colon armed himself to commit murder, it would be entirely sensible for the Court to simply reimpose the original sentence by restructuring it.

In this particular case, however, we recommend a measure of leniency. The government recognizes that Colon entered a guilty plea in this case, and provided cooperation. Further, he has behaved commendably thus far in prison, denouncing his gang affiliation; earning a GED, and a paralegal certification, and an associate's degree in biblical studies; and extensively participating and aiding in religious and psychology services. He has also maintained ties with his supportive family.

In these circumstances, a just result would be removal of the five-year sentence on Count Five, with the remainder of the 23-year term remaining intact. That action would recognize Colon's apparent maturation and good conduct in custody, while maintaining an appropriate sentence for Colon's heinous crimes, which included plots to murder

others. The defendant's suggestion, that the total sentence essentially be cut in half, is unsupportable.

## IV.   The Defendant's Legal Challenges Are Incorrect, and Need Not Be Resolved in Any Event.

Colon questions the current mandatory minimum sentences on various counts, as well as the current guideline calculation. His arguments are incorrect, and need not be resolved in any event.

### A.   There Is No Basis for Revisiting the Sentences on the Non-924(c) Counts.

If the Court accepts the government's recommendation, to vacate Count Five and the five-year consecutive term on that count, then no action at all is required with respect to the other counts. Where the government is not seeking an increase in sentence on any count, there is no legal basis for changing the terms of the remainder of the sentence. We recognize that in its January 27, 2020, order, without full briefing by the parties, the Court simply "vacated" the judgment. That is not a correct action, however. There is no infirmity at all in any of the counts of conviction other than Count Five. The Court should make clear the Count Five is vacated, and the conviction and sentences on all other counts remain undisturbed. That would end the matter.

In a supplemental sentencing memorandum filed today, Colon asserts he is entitled to de novo resentencing. He relies on *United States v. Miller*, 594 F.3d 172 (3d Cir. 2010), which stated, "it is well established that when the remand includes instructions to vacate at least one interdependent count of conviction, a de novo sentencing is appropriate." *Id.* at 180. That rule does not apply here for many reasons. First, we are not

dealing with remand from the Court of Appeals; this matter requires only the required vacating by the district court of a single count of conviction. Further, the 924(c) count is not "interdependent"; it is a standalone charge for which the pertinent statute requires a separate, consecutive term of imprisonment. Lastly, it would be quite perverse if the "sentencing package" doctrine on which *Miller* is premised, which permits a court to increase a sentence on various counts if the sentence on one is vacated, were employed here to give Colon a staggering windfall and a lower sentence on charges that are perfectly valid and on sentences that are final. For all of these reasons, there is no basis for reduction of the counts that are unaffected by *Davis.*

Even if the Court does revisit the total sentence on the remaining counts, there is no reason to lower that sentence. If anything, as explained earlier, it would be sensible to raise it to match the original total sentence.

**B.      The Sentences on the RICO and Drug Counts Remains Appropriate.**

**1.      There has been no change in the mandatory minimum sentences.**

Colon first argues that the sentences on the drug counts should be lower, focusing on the mandatory minimum terms. Those terms, however, were not decisive in the final sentences that were imposed.

In this case, the mandatory minimum terms of imprisonment on Counts 14, 18, 27, and 30 was 10 years, under 21 U.S.C. §§ 860(a) and 841(b)(1)(B), and the mandatory minimum term of imprisonment on Count 35 was 20 years, under 21 U.S.C. § 841(b)(1)(A).

That would not be true today. These assessments rested on the conclusion that Colon had previously been convicted of a "felony drug offense," which raised the statutory penalties for offenses involving quantities of drugs specified in Section 841(b)(1)(A) and (B). Later, in Section 401 of the First Step Act, effective December 21, 2018, Congress narrowed the classes of prior convictions that increase the statutory penalties. Under the current law, which in part requires the existence of a prior "serious drug felony" for which the defendant served more than 12 months in custody, Colon does not have a qualifying conviction. If sentence were imposed in this case today, the mandatory minimum would be five years under Section 841(b)(1)(B) for Counts 14, 18, 27, and 30, and ten years under Section 841(b)(1)(A) for Count 35.

However, Congress expressly decreed that this change would not apply retroactively in any case, such as this one, in which the sentence was imposed before the enactment of the First Step Act. *See* § 401(c) (the provision "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."); *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) (declining to apply § 401 where the sentence was imposed before the First Step Act and the case remained on direct appeal afterwards).

The Third Circuit has further held that the First Step Act does not apply where a sentence on an unaffected count of conviction was vacated after enactment of the First Step Act. In *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020), the Court addressed the identical non-retroactivity provision in Section 403 of the First Step Act, which lowered the penalty for most successive violations of 18 U.S.C. § 924(c). The Court held that the

amendment did not apply retroactively in a case in which a sentence was imposed before the Act was passed, even where another non-924(c) part of the sentence was modified after the passage of the Act. The equivalent is true here, as Colon admits in a supplemental sentencing memorandum: Section 401 does not apply to drug counts in which the sentences were imposed before the First Step Act, where only the sentence on a different charge (here, the 924(c) count) has been vacated.

In short, as stated earlier, there is no basis whatsoever for vacating the sentence on any of the drug counts, where only the conviction for a 924(c) offense is invalidated. In this circumstance, where the government does not seek any change in the sentences on the drug convictions, the prohibition on retroactive application of Section 401 squarely applies.

Alternatively, even if that conclusion is incorrect, the issue is of no moment here. The original mandatory minimum terms, peaking at 20 years for Count 35, had no actual impact on the sentence. The parties stipulated to a greater range, and the Court in its discretion determined that 28 years was the right sentence. If, as we suggest, the Court now reduces the total sentence to 23 years by vacating Count Five, the Court may make clear that it would impose that total sentence upon consideration of all 3553(a) factors regardless of whether the highest mandatory minimum for a drug conviction is 10 years or 20 years. That as well would moot this issue.

**2.      The sentence should be the same whether or not the defendant is a career offender.**

Colon also challenges the Sentencing Guidelines determination. Again, this issue should not be reached. The Court should simply vacate the five-year sentence on Count Five, leaving the remainder of the judgment undisturbed. There is no infirmity regarding any other count of conviction that requires resentencing.

Even if the Court does find it necessary to recalculate the Sentencing Guidelines, it should make clear that it would impose the same final sentence regardless of that calculation. That obviates the need to resolve the issue Colon raises.

His contention is the kind of convoluted and rather absurdist assertion that only the categorical approach can create. Colon was held subject to sentencing as a career offender, under U.S.S.G. § 4B1.1, based on two prior convictions for "controlled substance offenses," both of which involved possession of marijuana with intent to deliver in violation of Pennsylvania law.

Those prior crimes unquestionably involved marijuana, but under the categorical approach, that does not end the matter. Colon's assertion is that the Pennsylvania definition of "marijuana" is now overbroad with respect to the federal definition, and therefore categorically cannot stand as a "controlled substance offense" under Section 4B1.2(b). The reasoning is that the Pennsylvania definition at the time of Colon's prior

convictions included hemp, but hemp was removed from the federal controlled substances schedule in 2018.[3]

This argument, which was accepted by a district court in *United States v. Miller*, 2020 WL 4812711 (M.D. Pa. 2020), has divided many appellate courts. It raises two issues. First, in applying the guideline definition of "controlled substance offense," courts are divided regarding whether the term "controlled substance" refers exclusively to substances found in the federal drug schedules. If it does, this means a state statute may be categorically overbroad where it addresses substances not found on the federal schedules. A second issue is when that comparison is made – at the time of the prior offense, or at the time of the federal sentencing. Recently, *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021), answered both questions in the defendant's favor.  Two other circuits have agreed that "controlled substance" refers exclusively to substances found in the federal drug schedule. *See United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021); *United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018). By contrast, three circuits have held that the definition of "controlled substance" is not tethered to the federal standard. *See United States v. Ward*, 972 F.3d 364, 369-75 & n.12 (4th Cir. 2020); *United States v. Ruth*, 966 F.3d 642, 651-54 (7th Cir. 2020); *United States v. Smith*, 775 F.3d 1262, 1267-68 (11th Cir. 2014).

---

[3] Colon presents the same argument in challenging the application of enhanced statutory penalties, arguing that the Pennsylvania crimes now do not qualify as a "felony drug offense" that formerly increased the penalties under 21 U.S.C. § 841(b)(1). The argument need not be resolved for the reasons explained earlier, given that the mandatory minimum sentences are not controlling in this case.

There are numerous independent reasons not to resolve the question here.

First, as explained, there is no basis for resentencing on the drug counts, and therefore no need for a new guideline calculation.

Second, for the reasons explained earlier, even if the career offender guideline does not apply, the Court may readily grant an upward variance and impose sentence as if it did. As stated in part III, where the categorical approach leads to a silly result, the Court may exercise its discretion to correct the matter. Colon's prior convictions had nothing to do with hemp, and imposing a sentence because others' convictions in Pennsylvania at the time might have produces a nonsensical result.

Third, and most notably, the final sentence recommended by the government (23 years, or 276 months), falls below even the *current* guideline range if Colon were not a career offender. As explained in part of the revised presentence report with which the defense agrees, the offense level for Colon's crimes, independent of the career offender application, is 37. The impact of the career offender provision in this case is to raise the criminal history category, from IV (*see* original PSR ¶ 151) to VI. If the category were IV, the guideline range would be 292 to 365 months. The Court should therefore impose the lower sentence recommended by the government, and make clear that it would impose the same term whether the career offender guideline applies or not.

## V.  Conclusion.

For the reasons stated above, the government recommends that the Court vacate the five-year sentence imposed on Count Five and leave the judgment otherwise intact.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

- 24 -

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified

below through the Electronic Case Filing (ECF) system, and by email:

Susan M. Lin, Esq.

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney

Dated:  July 11, 2021.