IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

LUIS COLON,

                Defendant.

CRIMINAL NO. 09-00155

**Slomsky, J.**                                                                              **October 2, 2024**

**I.**      **INTRODUCTION**.................................................................................................. 1

**II.**     **BACKGROUND** ................................................................................................... 3

  A.  Defendant's Criminal History ........................................................................ 3

  B.  Defendant's First Motion for Compassionate Release ....................................... 4

  C.  The Government's Response in Opposition to Defendant's Compassionate
      Release Motion............................................................................................ 6

  D.  Defendant's Reply to Government's Opposition ............................................... 7

  E.  Defendant's Supplemental Motion for Reduction in Sentence Pursuant to 18 U.S.C.
      § 3582(c)(2)............................................................................................... 7

  F.  Government's Response to Defendant's Supplemental Motion ........................... 8

**III.**    **ANALYSIS** ........................................................................................................ 8

  A.  The Analytical Framework Regarding Motion for Compassionate Release
      Pursuant to Section 3582(c) ......................................................................... 8

  B.  Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C.
      § 3582(c)(1)(A)(i) Will Be Denied ................................................................ 13

      1. Defendant's Medical Conditions Do Not Present an Extraordinary
         and Compelling Reason for His Release .................................................. 13

2. Defendant's Evidence of Rehabilitation Does Not Present an Extraordinary and Compelling Reason for His Release ................................................................... 15

C.    Defendant's Supplemental Motion Pursuant to 18 U.S.C. § 3582(c)(2) Will Be Denied. ........................................................................................................ 16

D.    The § 3553(a) Sentencing Factors Weigh Against Defendant's Release ......................... 20

**IV.    CONCLUSION** ....................................................................................................... 21

## I.   INTRODUCTION

On June 9, 2011, pursuant to a guilty plea agreement (Doc. No. 344), Luis Colon ("Defendant") pled to the following criminal acts:

**(Count 1):** Conspiracy to participate in a racketeering (RICO) enterprise, in violation of 18 U.S.C. § 1962(d), stemming from his involvement as leader and "First Crown" of the Almighty Latin Kings and Queens Nation ("ALKQN");

**(Counts 4 and 6):** Conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5);

**(Count 5):** Using and carrying a firearm during a violent crime, in violation of 18 U.S.C. § 924(c);

**(Counts 13 and 17):** Distribution of more than fifty (50) grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A);

**(Count 15):** Distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C);

**(Counts 26 and 29):** Distribution of more than five (5) grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B);

**(Counts 14, 18, 27, 30):** Distribution of controlled substances within one thousand feet of a public housing authority property, in violation of 21 U.S.C. § 860(a); and

**(Count 35):** Conspiracy to possess with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

On March 14, 2012, Defendant was sentenced to 336 months in prison followed by ten (10) years supervised release.  (See Doc. No. 425.)  On July 14, 2021, pursuant to the United States Supreme Court's ruling in United States v. Davis, 139 S. Ct. 2319 (2019), which invalidated part of the definition of "crime of violence" in Section 924(c)-related crimes, Defendant's conviction on Count 5 was vacated, and his sentence was reduced to 216 months.  (Doc. No. 642.)  Defendant is currently housed at the Federal Correctional Institution in Fairton, New Jersey ("F.C.I. Fairton"). (Doc. No. 654).

Defendant has two motions pending before this Court.  First, he moves for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i).[1]  (Id.)  In this Motion, Defendant submits that compassionate release should be granted because:  (1) COVID-19 remains a persistent threat to Defendant and is an aggravating aspect of his confinement that weighs in favor of a sentence reduction, and (2) his continued rehabilitation constitutes an extraordinary and compelling reason for reduction.  (See id.)

Second, Defendant filed a Supplemental Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(2).  (Doc. No. 663.)  In this Motion, Defendant argues that due to a change in the United States Sentencing Guidelines ("Sentencing Guidelines"), specifically Amendment 821, Defendant's criminal history points should be reduced, requiring further reduction in his sentence. (Id. at 3-4.)

The Government opposes both Motions arguing that (1) "defendant has been vaccinated against COVID-19 and this does not present an extraordinary and compelling reason for relief, (2) rehabilitation alone is not a basis for compassionate release, and (3) although Amendment 821 of the Sentencing Guidelines lowers Defendant's guideline range, he is not eligible for a reduction in sentence because his 216-month sentence is below the bottom of the amended range.  (See Doc. Nos. 656, 665.)  On October 28, 2022, Defendant filed a Reply, renewing his concerns about COVID-19 due to his medical history.  (See Doc. No. 659.)

For the reasons that follow, Defendant's Motions for Compassionate Release (Doc. Nos. 654, 663) will be denied.

---

[1] This is Defendant's second Motion for Compassionate Release.  His first motion was filed on May 7, 2015. (Doc. No. 534).  It was denied on August 2, 2017. (Doc. No. 575.)

## II.    BACKGROUND

### A. Defendant's Criminal History

Defendant served as First Crown and regional officer to a racketeering enterprise known as the Almighty Latin Kings and Queens Nation ("ALKQN").  ALKQN is headquartered in Chicago, Illinois, with state and local chapters throughout the country.  Defendant served as First Crown of the Bethlehem Sun Tribe Chapter located in the Eastern District of Pennsylvania.  He regularly attended meetings of the local chapter where dues were collected, trials were held on violations of tribe rules, and punishments, including beatings and killings, were carried out.

In March 2004, Defendant led fellow Sun Tribe members Nefti Colon, Pedro Velasquez, Oscar Hernandez, Carlos Martinez, and Hector Rivera in a plot to kill rival gang members in New Jersey.  Defendant and his cohorts armed themselves and headed to Philadelphia to conspire with the Philadelphia Latin Kings before traveling to New Jersey to carry out the attack.  After learning of the conspiracy, law enforcement officers arrested Defendant and other members of the Bethlehem and Philadelphia ALKQN chapters en route to the attack.

From November 2007 through January 2008, Defendant and other Sun Tribe members conspired to murder a tribe associate, Big Head Izzy, after he allegedly gave a statement to the police implicating another member of the Sun Tribe in a murder.  The attempted murder of Big Head Izzy was also prevented by law enforcement.

On November 29, 2007, Defendant distributed approximately sixty-seven (67) grams of crack cocaine within one thousand feet of Parkridge Housing Development, a housing facility owned by a public housing authority.  This transaction was audio and video recorded.  Later that day, Defendant returned and distributed approximately six grams, seven ounces of methamphetamine.

On December 13, 2007, Defendant distributed approximately fifty-five (55) grams of crack cocaine to a fellow Latin King Member, again within one thousand feet of the Parkridge Housing Development.  This transaction was also audio and video recorded.

On March 14, 2008, Defendant and a fellow member of the Sun Tribe sold approximately six (6) grams, seven (7) ounces of methamphetamine to a third tribe member.  A few weeks later, on March 28, 2008, Defendant and the same member of the Sun Tribe sold approximately seven (7) grams, two (2) ounces of methamphetamine to a different Sun Tribe member.  These transactions were audio and video recorded and occurred on public housing authority property.

Finally, on May 8, 2008, Defendant paid a fellow gang member six thousand dollars to travel to Las Vegas, Nevada to purchase 1,793 grams (approximately four (4) pounds) of methamphetamine.  The gang member traveled to Las Vegas, purchased the methamphetamine, but was arrested before he could supply it to Defendant.  Law enforcement officers observed Defendant at the Philadelphia airport when the airplane with his drug conspirator was scheduled to land.

On June 9, 2011, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) ("C plea"), Colon pled guilty to the above-mentioned charges.

### B.  Defendant's First Motion for Compassionate Release

On June 6, 2022, Defendant submitted a "Request to Staff" or "cop out" for compassionate release to the Warden at F.C.I. Fairton.  (Doc. No. 654 at 6.)  Defendant states this request was never responded to.  (Id.)  Then, on July 29, 2022 Defendant filed an Informal Resolution Form, citing his "continued rehabilitation and the threat of COVID-19 due to [his] obesity and history as a cigarette smoker."  (Id. at 51.)  The record is silent as to whether the Warden took any official action on this request.  On August 2, 2022, Defendant filed a Request for Administrative Remedy

asking the Bureau of Prisons to reduce his sentence because he presented 'extraordinary and compelling reasons' for a reduction of sentence, which include: 1) "the persistent threat to my health due COVID-19 as I am obese and have a history of cigarette smoking"[;] 2) "my continued rehabilitation"[; and] 3) "[m]y withdrawing from the gang several years ago."  (Id. at 52.)  The Warden did not respond to this request.  (Id. at 6.)  The Government concedes that thirty (30) days have elapsed since the request, and Defendant has satisfied the administrative exhaustion requirement of § 3582(C)(1)(A).  (Doc. No. 656 at 6.)

On September 12, 2022,[2] Defendant filed pro se his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i).  (Doc. No. 654.)  Defendant submits that his health conditions as well as his continued efforts at rehabilitation warrant his release from custody.  (Id. at 7-9.)  Specifically, Defendant alleges that he is at considerable risk from the resurgent COVID-19 virus because he has a Body Mass Index ("BMI") of 37, making him clinically obese, coupled with his history of smoking.  (Id. at 9.)  Defendant supports this assertion with copies of his medical records dated November 1, 2020 where there is a note that Defendant's BMI was "reviewed" and "[a]ppears obese."  (Id. at 20.)  This record also places his BMI at 37 and notes him as prediabetic. (Id.)  Defendant also refers to the Centers for Disease Control ("CDC") website and avers that the CDC has recognized obesity as increasing a person's risk of severe illness from COVID-19.  (Id. at 7.)  He concedes that although he is vaccinated, "it is widely known that the vaccine's effectiveness drops after six months" and "the vaccine might not offer Mr. Colon as much antibody protection due to his obesity."  (Id.)  Defendant argues that these factors constitute "extraordinary and compelling reasons to grant . . . his request for compassionate release."  (Id.)

_____

[2] Defendant's pro se motion was docketed on September 16, 2022.

5

Additionally, Defendant argues that, while housed at F.C.I. Fairton, Defendant has committed himself to the Christian faith, the study of the Bible and service within the Church and prison community.  (Id. at 10.)  He notes that he works full-time at the prison commissary and part-time at the Religious Services as an orderly.  (Id.)  Defendant has also provided letters from the Bureau of Prisons ("BOP") staff and other friends reflecting positively on his character.[3]  (Id. at 23-38.)

Lastly, in reference to the § 3553(a) factors, Defendant avers that he has already served the vast majority of his sentence and three (3) of his (6) six co-defendants have already been released. (Id. at 15-17.)  Moreover, Defendant proclaims he has dedicated himself to serving others while working on the Suicide Watch Companion and Mental Health Care Companion, where he assisted men with severe mental illness.

### C.  The Government's Response in Opposition to Defendant's Compassionate Release Motion

The Government maintains that Defendant's Motion should be denied because Defendant is vaccinated against COVID-19 and does not present an extraordinary and compelling reason permitting relief.  (Doc. No. 656.)  Specifically, the Government asserts that while Defendant provides evidence that his BMI shows obesity, Defendant had advised BOP medical personnel that he does not have a history of smoking.  (Id. at 6; see also Exhibit A.)  Additionally, the Government argues the Defendant was vaccinated against COVID-19 on January 22, 2021 and February 10, 2021, and while he has no record of receiving a booster injection, it is available to BOP inmates.

---

[3] These letters were also submitted during Defendant's July 2021 resentencing.  (See Defendant's Sentencing Memorandum, Doc. No. 637.)

(Id. at 6.)  The Government also argues that F.C.I. Fairton had no positive COVID-19 inmates at the time their Opposition was filed on October 14, 2022.

Regarding Defendant's rehabilitation, the Government contends that, pursuant to 28 U.S.C. § 994(t), rehabilitation alone is not a basis for compassionate release.  (Id. at 18.)

### D.  Defendant's Reply to Government's Opposition

On October 25, 2022, Defendant submitted a Reply.  (Doc. No. 659.)  First, Defendant reiterates the risk that COVID-19 has on him due to his physical condition.  (Id. at 2.)  Second, he contends that his medical records confirm his history of smoking.  (Id.)  Specifically, the "Substance Abuse" category is marked "YES – Tobacco abuse."  (Id. at 3.)  Next, Defendant argues that as of October 24, 2022, twenty-seven (27) staff members at FCI Fairton were infected with COVID-19 and his housing unit in general population was locked down due to contact with an infected individual.  (Id. at 4.)  Lastly, Defendant repeats his commitment to rehabilitation, and also states that his First Step Act credits from participating in BOP programs has moved his release date from September 7, 2026 to September 7, 2025.  (Id. at 5.)

### E.  Defendant's Supplemental Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(2)

On November 2, 2023, Defendant submitted a Supplemental Motion for Compassionate Release.  (Doc. No. 663.)  Defendant requests that this Court also take into consideration that his Bureau of Prisons "PATTERN" score was reduced, thus making him eligible for First Step Act credits.  (Id. at 3.)  Additionally, Defendant avers that, pursuant to changes in the Sentencing Guidelines, specifically Amendment 821, he is entitled to a reduction in his "status points."  (Id.) Defendant claims that his criminal history points should be reduced from 8 points to 6 points,

changing his Criminal History Category from Category IV to Category III.  (Id. at 3-4.)  Defendant

also provides additional letters from BOP staff, his wife and Defendant himself.[4]  (Id. at 20-27.)

### F.  Government's Response to Defendant's Supplemental Motion

The Government argues that while Amendment 821 may lower Defendant's Criminal

History Category and reduce his guideline range to between 262 months and 327 months,

Defendant is ineligible for a reduction in sentence because his current sentence of 216 months falls

below this guideline range.  (Doc. No. 665 at 8.)

## III.   ANALYSIS

### A.  The Analytical Framework Regarding Motion for Compassionate Release
   Pursuant to Section 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been

imposed . . . ."  18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general

"rule of finality[,]" including the compassionate release statute § 3582(c)(1)(A).  Freeman v.

United States, 564 U.S. 522, 526 (2011).  As amended by the recently enacted First Step Act,

Section 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a

defendant's motion after the defendant has exhausted his administrative remedies.  See §

3582(c)(1)(A).  The statute provides, in part, that:

> the Court, upon Motion of the Director of the Bureau of Prisons, or upon motion of
> the defendant after the defendant has fully exhausted all administrative rights to

---

[4] On December 18, 2023, Federal Community Defender Office for the Eastern District of
Pennsylvania submitted a letter notifying the Court that they were appointed to review all cases
that possibly qualified for a sentencing reduction pursuant to Amendment 821 of the Sentencing
Guidelines. (Doc. No. 664.)  The Defender's Office reviewed Colon's pro se petition and
submitted they had nothing further to add.  (Id.)

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not specifically defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  In this regard, Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

[A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—

(1) (A) Extraordinary and compelling reasons warrant the reduction; . . .

(2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a)(1)-(3).

Under Section 1B1.13(b), "extraordinary and compelling reasons" exist under any of the following circumstances or a combination thereof.  Further, Section 1B1.13(b) lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 (b)(1)-(3).  This Note states:

9

(1) Medical Circumstances of the Defendant. —

(A)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)    The defendant is—

   (i)    suffering from a serious physical or mental condition,

   (ii)    suffering from a serious functional or cognitive impairment, or

   (iii)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided without which the defendant is at risk of serious deterioration in health or death.

(D)    The defendant presents the following circumstances—

   (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

   (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

   (iii)    such risk cannot be adequately mitigated in a timely manner.

10

(2)  AGE OF THE DEFENDANT. —The Defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3)  FAMILY CIRCUMSTANCES OF THE DEFENDANT. —

   (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

   (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

   (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

   (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family members or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.  For purposes of his provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

*        *        *

§ 1B1.13 (b)(1)-(3).

But there are limitations in Guideline Section 1B1.10, which is a policy statement, that provides guidance on when a sentence may be reduced pursuant to an amendment to the Sentencing Guidelines.  One provision provides that a court cannot reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) to a term that is less than the minimum of the amended guideline range.  (See § 1B1.10(b)(2)(A)).

11

If a district court determines that extraordinary and compelling reasons exist, it must then weigh the reasons against the § 3553(a) factors to determine if a sentence reduction is warranted, and, if so, the extent of such reduction.  See United States v. Somerville, 463 F. Supp. 3d 585, 588 (W.D. Pa. 2020) ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a).").  Section 3553(a) establishes factors for a court to consider in initially imposing a sentence.  Not every factor is applicable, however, when considering a motion for compassionate release.  In the instant case, the applicable factors are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (5)-(6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Will Be Denied

Defendant's Motion will be denied because he has not demonstrated an extraordinary and compelling reason for his release.  Furthermore, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[5]  Each of these conclusions is discussed seriatim.

### 1. Defendant's Medical Conditions Do Not Present an Extraordinary and Compelling Reason for His Release

To start, none of Defendant's medical conditions present an extraordinary and compelling reason for his release.  Specifically, he asserts that he has a history of smoking and obesity, both of which are conditions that the Center for Disease Control and Prevention ("CDC") has stated are more likely to cause severe illness from COVID-19.

Courts have routinely found that smoking and obesity do not rise to the level of "extraordinary and compelling reasons" for release. See, e.g., United States v. Whiteman, No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) ("Given [defendant's] relative youth (forty-two) and his lack of other risk factors, his obesity and high blood pressure fall short of presenting an extraordinary and compelling reason for release"); see also United States v. Jones,

---

[5] Because the Motion for Compassionate Release is being denied for these reasons, there is no need to decide if a reduction is consistent with policy statements of the Sentencing Commission.

No. 02-0778, 2020 WL 7640944, at * 3 (E.D. Pa. Dec. 30, 2020) ("[Defendant], however, provides no detail regarding his tobacco usage, presents no ailments associated with smoking and has been in federal prison since 2011, where smoking is banned."); United States v. Allen, No. CR 18-216 (KM), 2023 WL 314351 (D.N.J. Jan. 19, 2023) (finding obesity, hypertension, smoking do not constitute extraordinary circumstances warranting release); United States v. Milchin, No. 17-00284-1, 2020 WL 4475902, at *1 (E.D. Pa. Aug. 4, 2020) (Defendant's obesity and high cholesterol do not present an extraordinary and compelling reason for his release.); United States v. Sutton, No. 20-276, 2022 WL 3018190, at *3 (E.D. Pa. July 28, 2022) (obesity, diabetes, high blood pressure, high cholesterol, and asthma do not constitute an extraordinary and compelling reason for compassionate release.)

Here, Defendant is 40 years old.  He has a history of smoking, with his medical records indicating both a history and non-history of smoking. [6]  (See Doc. No. 659 at Exhibit A.)  But even assuming he has a history of smoking, this prior history, as discussed supra, is insufficient to constitute an extraordinary and compelling reason for his release.

Moreover, Defendant has not shown that he is at high risk of contracting COVID-19. Defendant is vaccinated.  The Third Circuit has recognized "[g]iven vaccine availability, a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling reason for release unless he can convincingly show that he is 'unable

---

[6] A review of Defendant's medical records shows:

Under "Abdominal Aortic Anueysm", there is a note that reads, "NO: >65 yrs and history of smoking."

Under Substance Abuse, it states, "YES: tobacco abuse"

Under Lipid Disorders, it states, "NO: Diabetes, Existing cardiovascular disease, [h]istory of hypertension and smoking, Mother/grandmother heart attack or stroke <60[.]"

to receive or benefit from a vaccine' or that he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" United States v. Estevez-Ulloa, Crim. No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) (citing United States v. Rucker, 27 F.4th 560, 563 (7th Cir. 2022)); see also United States v. Reed, Crim. No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (the threat of COVID-19 alone does not warrant compassionate release once a vaccine is made available to the inmate); United States v. Hannigan, No. 19-373 2022, WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (vaccination against COVID-19 lessens the risk of serious illness or death, such that the threat of COVID-19, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release); United States v. Berry, No. 09-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (finding that while the defendant suffered from conditions making him more vulnerable to serious illness or death from COVID-19, his vaccination status provided sufficient protection against the risks).

Defendant concedes that he is fully vaccinated.  Moreover, booster injections are available to him.  Thus, Defendant is not "suffering from a serious . . . medical condition . . . that substantially diminishes [his ability] to provide self-care within the environment of a correctional facility."  Id. (quoting Sent'g Guidelines Manual § 1B1.13 cmt. n.1).

## 2.  Defendant's Rehabilitation Does Not Present an Extraordinary and Compelling Reason for His Release

Likewise, as described above, Congress has directed that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t). Courts in the Third Circuit have also held the same.  (See, e.g., United States v. Wiktorchik, No. 10-CR-064, 2023 WL 5152308 (E.D. Pa. Aug. 9, 2023), aff'd, No. 23-2564, 2024 WL 1254173 (3d Cir. Mar. 25, 2024); United States v. Claudio, No. 17-546, 2022 WL 1623650, at *3 (E.D. Pa.

May 23, 2022) ("The defendant's rehabilitation does not constitute an extraordinary and compelling reason for release.")).

The Court has reviewed Defendant's rehabilitative programming, including his time spent in programs like "Part II Self-help Group NA/AA Intro Drug Education" and "Eating to Win: Activity, Diet and Weight Control Study Course." (See Doc. No. 654 at 46, 47.) And the Court acknowledges Defendant's ongoing rehabilitative efforts, including his involvement in F.C.I. Fairton's Religious Services and Mental Health Unit. These are all worthy efforts to be encouraged. However, pursuant to 28 U.S.C. § 994(t), rehabilitation is not an extraordinary and compelling reason for release.

### C. Defendant's Supplemental Motion Pursuant to 18 U.S.C. § 3582(c)(2) Will Be Denied

In his Supplemental Motion for Compassionate Release to reduce his sentence, Defendant argues that, pursuant to Amendment 821 to the Sentencing Guidelines, his sentence should be reduced once again. [7] (Doc. No. 663.)

Under 18 U.S.C. § 3582(c)(2), a court may reduce a final sentence if that sentence was based on a sentencing range later amended by the United States Sentencing Commission (the "Sentencing Commission"). It provides that: "[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment . . . if such reductions

---

[7] Defendant also argues that his BOP "PATTERN" score was reduced making him eligible for First Step Act Credits. (Doc. No. 663 at 3.) The United States Bureau of Prisons has the responsibility to calculate First Step Act Credits. (See 18 U.S.C.A. § 3632(d)(4)). If a defendant is dissatisfied with the calculation, he may challenge it by filing administrative appeals within the Bureau of Prisons.

are consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

In Amendment 821, effective November 1, 2023, the Sentencing Commission lowered the overall criminal history impact of "status points" for offenses committed while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release or escape status from two points to one point.  (See U.S.S.G. § 1B1.10, n.7).  Specifically, § 4A1.1 was amended as follows:

> striking subsection (d) as follows:
>
> "(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.";
>
> by redesignating subsection (e) as subsection (d);
>
> and by inserting at the end the following new subsection (e)
>
> "(e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

USSG §4A1.1.

Here, Amendment 821 would reduce Defendant's guideline range.  At Defendant's original sentencing on March 14, 2012, Defendant had eight (8) criminal history points, including two (2) points for committing an offense while on probation.  (See Pre-Sentencing Report dated February 9, 2012).  This score remained unchanged at his re-sentencing on July 14, 2021, when his guideline range was reduced on other grounds to 292 to 365 months, and he was sentenced to 216 months imprisonment.  (See Doc. No. 639)  Now, pursuant to Amendment 821, Defendant's criminal history would be reduced from eight (8) points to six (6) points, dropping him to Criminal History Category III.  This would make Defendant's new guideline range 262 to 327 months.

Section lBl.l0(a) of the Sentencing Guidelines provides that Amendment 821 should be applied retroactively. It reads, in relevant part:

a)   AUTHORITY

(1) IN GENERAL.— In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

(2) EXCLUSIONS— A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—

(A) none of the amendments listed in subsection (d) is applicable to the defendant; or

(B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range.

. . .

b)   DETERMINATION OF REDUCTION IN TERM OF IMPRISONMENT.—

(2) LIMITATION AND PROHIBITION ON EXTENT OF REDUCTION.—

(A) LIMITATION. — Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.

In Dillon v. United States, 560 U.S. 817 (2010), the Supreme Court established a two-step approach to retroactively applying Guideline amendments to persons incarcerated before the date of an amendment:

At step one, § 3582(c)(2) requires the court to follow the [Sentencing] Commission's instructions in § lBl.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §

18

lBl.l0(b)(l) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." <u>Ibid.</u>

Consistent with the limited nature of§ 3582(c)(2) proceedings, § 1Bl.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) ... to a term that is less than the minimum of the amended guideline range" produced by the substitution. § lB1.10(b)(2)(A) ....

At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

<u>Id.</u> at 827.  In following these steps, a court is able to discern whether a defendant is eligible for a reduction in his term of imprisonment.

A "guideline range" is "the guideline range that corresponds to the Offense Level and the Criminal History Category pursuant to § 1B1.10(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance."  U.S.S.G. § lBl.10, cmt. n. l(A).

However, Defendant was ultimately resentenced to 216 months in 2021.  (Doc. No. 643.)  Although Amendment 821 would further reduce Defendant's guideline range, the range is not lower that what Defendant was resentenced to.  Rather, it remains above Defendant's sentence of 216 months.  Pursuant to §1B1.10(2)(A), the Court cannot reduce a sentence to a term that is less than the minimum of the amended guideline range.  Therefore, Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) (Doc. No. 534) will be denied.

**D.  The § 3553(a) Sentencing Factors Weigh Against Defendant's Release**

The relevant § 3553(a) factors also do not support Defendant's compassionate release. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See 18 U.S.C. § 3553(a)(1).  Although Defendant asserts he has committed his time in prison to change and helping others, the Court notes the seriousness of the crimes Defendant pled guilty to, including but not limited to conspiracy to participate in a RICO enterprise, conspiracy to commit murder, and conspiracy to possess with intent to distribute more than 500 grams of methamphetamine.  Considering the foregoing, there is no assurance that Defendant will be deterred from committing additional crimes if released.

Second, the Court has also considered whether Defendant's release would reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes.  See 18 U.S.C. § 3553(a)(2)(A)-(C). Although Defendant has served over three-quarters of his 216-month sentence, his crimes warrant the sentence he received.  As previously mentioned, Defendant was re-sentenced to a term of imprisonment much lower than the guideline range.  His release at this point, however, would not reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See 18 U.S.C. § 3553(a)(6).  Defendant has received a sentence lower than the range set by the Sentencing Guidelines, which Congress created specifically to address sentencing disparities.  To reduce Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted

sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.

Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 654) and 18 U.S.C. § 3582(c)(2) (Doc. No. 665) will be denied.  An appropriate Order shall follow.